THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALISON HESTER, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CARILION CLINIC MEDICAL PLAN )<br>and AETNA LIFE INSURANCE )<br>COMPANY, )<br>)<br>    Defendants. ) | Civil Action No. 7:18cv91 |

# FIRST AMENDED COMPLAINT

## Jurisdiction and Venue

1. Plaintiff's claims against Defendants are filed pursuant to the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et. seq. ("ERISA").

2. Pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiff seeks an order that clarifies her right to past and future health benefits for mental health treatment under the terms of the Carilion Clinic Medical Plan (hereinafter "The Plan"). Specifically, Plaintiff seeks (a) a declaration and enforcement of rights under The Plan; (b) the payment of past due benefits with pre-judgment interest; (c) a declaration that residential treatment and other related mental health treatments are covered benefits under The Plan; and (d) an award of attorney's fees and costs.

3. Venue and jurisdiction are proper pursuant to 29 U.S.C. § 1132(e)-(f).

## The Parties

4. Plaintiff Alison Hester was at all relevant times an employee of Carilion


FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

1

1081.0001\KMD
4841-1478-9990 .v1

Clinic and a participant under The Plan.

5. Plaintiff has a daughter, "Madeline." At the relevant time, Madeline was a minor and an eligible dependent and beneficiary under The Plan.

6. The Plan is a medical plan established under ERISA and offered by Carilion Clinic. The Plan is administered by Aetna Life Insurance Company ("Aetna"). Aetna is the named fiduciary for the Plan.

**Background of the Claim**

7. Madeline suffered from diagnosed adjustment disorder, neurodevelopmental disorder, mood disorder, oppositional defiant disorder, depression, anxiety, and suicidal ideation. Madeline was also diagnosed with borderline personality traits.

8. Madeline showed patterns of anger, lying, stealing, hostile and defiant behavior, and self-harm. She was melancholy and withdrawn. She struggled in school, and her grades fell far below her intellect. She often got in trouble at school for behavioral issues, including brandishing the blade of a multi-tool at school and repeatedly getting in trouble for being on her phone in class.

9. Starting in seventh grade, Madeline became obsessively involved in sexual aspects of the internet, social media and texting.

10. Due to Madeline's struggles in school and disciplinary issues, her parents moved her to a private school in eighth grade. But in the fall of 2012, Madeline's parents discovered that Madeline suffered from suicidal ideation borne out in comments about self-harm made to others, made in suicide notes, and made in suicide pacts. Madeline



1081.0001\KMD
4841-1478-9990 .v1

began working with a therapist and their family doctor, who attempted multiple medications in multiple dosages and varying schedules. The medications and therapy were not effective.

11. Madeline failed eighth grade twice at private school. After this, her parents enrolled her in a summer school at a military academy in order to pass eighth grade.

12. For ninth grade, Madeline returned to public school. She continued to struggle, and she continued to withdraw into a hypersexualized online world. In February 2014, Madeline's parents took her phone and computer from her. But Madeline found old phones around the house and reactivated them via wireless networks. After her parents successfully rid the house of all smart devices, Madeline began talking about running away in addition to her continued talk of self-harm. Madeline even persuaded an acquaintance at school to sell her an iTouch, which she hid from her parents for months.

13. Madeline's parents created a written contract with Madeline at the beginning of her tenth grade year in 2014 outlining her expected academic performance and expected behavior. But Madeline breached the contract in mere weeks by taking a phone without permission and communicating with online persons who encouraged her to run away. Madeline's parents then withdrew her from public school and attempted to homeschool her for her tenth grade year.

14. But on October 15, 2014, Madeline stole her parents' car and money with the intent of driving to Maryland to meet an online stranger. Madeline did not have a driver's license and had never even had a driving lesson. Madeline left suicide notes for her parents. Madeline wrecked the car in Washington, D.C. and attempted to lie to police,


FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

resulting in her being held in a juvenile detention center.

15. When Madeline's parents picked her up from the juvenile detention center in Washington, D.C., they immediately took her to their local hospital for a one week stay in a short-term adolescent mental health center for crisis stabilization.

16. On October 29, 2014, Madeline was placed at RedCliff Ascent wilderness treatment program in southwest Utah. In a program where participants average a stay of 60 days, Madeline had to stay for 111 days. While Madeline attended RedCliff Ascent, her therapists in the program, the psychologist in charge of the program, her therapist in Roanoke, and an adolescent behavioral consultant unanimously decided that it was medically necessary for Madeline to transition to a residential treatment program.

17. In January 2015, Plaintiff called Aetna to ask if any sort of preauthorization was necessary for Madeline to receive treatment in a residential treatment program. She was told in no uncertain terms that if the program is residential, then their Aetna policy covers the stay. Plaintiff relied on this statement from Aetna in concluding that Madeline's residential treatment program would be covered. Otherwise, Plaintiff would have utilized alternative treatment options for Madeline.

18. Accordingly, Madeline was placed at Uinta Academy ("Uinta") in northeast Utah in February 2015. Uinta is a licensed, clinically-intensive, residential treatment center designed specifically to treat adolescent girls with Madeline's diagnostic profile. During Madeline's treatment at Uinta, she frequently referenced suicidal ideation.

19. On August 5, 2015, Plaintiff's healthcare advocate phoned Aetna to verify insurance coverage for Madeline's mental health treatment. An Aetna representative


FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

1081.0001\KMD
4841-1478-9990 .v1

stated that mental health residential treatment services were payable at 50% until they reached the out-of-pocket maximum and then at 100% with no yearly or lifetime maximums. Again, Plaintiff relied on this statement from Aetna in concluding that Madeline's residential treatment program would be covered. Otherwise, Plaintiff would have utilized alternative treatment options for Madeline.

20. Despite these assurances by Aetna representatives, Plaintiff received a denial letter dated September 30, 2015 in which Aetna denied coverage of the Uinta services because "[s]ervices from an unlicensed or non-certified provider are not eligible for coverage …"

21. Plaintiff later received an Explanation of Benefits form dated October 2, 2015 which denied coverage of the Uinta services because "[a]ll or a portion of this confinement could have been safely and adequately managed at an alternate level of care…"

22. On March 23, 2016, Plaintiff appealed. By letter dated April 26, 2016, Defendant denied the appeal and stated that the Uinta services were not medically necessary, that the inpatient stay could have been safely managed at a lower level of care, and that the facility did not meet Aetna's eligibility criteria because there was not a licensed behavioral health provider on-site 24 hours a day. Aetna specifically cited to the "medical necessity" requirements of The Plan.

23. On June 24, 2016, Plaintiff again appealed. By letter dated July 30, 2016, Defendant denied the appeal for the same reasons. In this denial, Aetna specifically cited to its Level of Care Assessment Tool ("LOCAT").


FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

24. On November 17, 2016, Plaintiff requested an independent review. On February 1, 2017, the independent review organization upheld Defendant's denial of coverage stating that Uinta services were not medically necessary as 24 hour monitoring was not necessary.

25. On February 1, 2017, Defendant sent a letter to Plaintiff indicating that the independent review was the final level of review under The Plan.

26. On July 10, 2017, Plaintiff issued a demand letter to Aetna. Plaintiff received a letter dated October 27, 2017 from Aetna again stating that Plaintiff had exhausted the levels of appeal available under the Plan.

27. As such, Plaintiff has exhausted all administrative remedies as contemplated under The Plan.

28. Based on the foregoing facts, Plaintiff asserts that pursuant to 29 U.S.C. § 1132(a)(1)(B), Defendants improperly denied benefits and that she is entitled to recover such benefits under the terms of The Plan, to enforce her rights under the terms of The Plan, and to clarify her rights to future benefits under the terms of The Plan.

**Relief Sought**

Plaintiff requests that this Court enter an order declaring the following:

a. That Defendants have violated the terms of the Plan, that the decision to deny benefits in this case was not only wrong, but arbitrary and capricious, and an abuse of discretion in light of independent medical and legal reviews which advised Defendants that the denial of these claims had no merit, that Defendants' denial was based on inconsistent and unsupported rationales regarding medical necessity despite Madeline's



medical providers' recommendations and her medical history, and that Defendants violated their duties under the Plan by, including but not limited to indicating on the telephone twice that Uinta services would be covered and then denying coverage.

      b.      That residential treatment, such as Uinta, is covered under The Plan.

      c.      That all benefits be paid, consistent with other plan terms as to amounts of payment, together with interest, costs, and attorney fees.

      d.      That there be a complete and accurate accounting of all claims paid together with a clear explanation as to how The Plan arrived at the amounts it has paid.

      e.      That Defendant be directed to pay all future claims related to Plaintiff's daughter, Madeleine, for residential treatment, such as Uinta, and related mental health treatment as long as the Plaintiff remains a participant under The Plan and as long as Madeline remains a beneficiary under The Plan.

      f.      That Plaintiff be awarded any remedial relief and equitable relief, or any other relief that this Court deems just and proper.

Respectfully submitted,

/s/ John C. Johnson
John C. Johnson
Virginia State Bar No.: 33133
Katherine M. DeCoster
Virginia State Bar No. 82696
Counsel for Alison Hester
FRITH ANDERSON + PEAKE, PC
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone: 540/772-4600
Fax: 540/772-9167
Email: jjohnson@faplawfirm.com
       kdecoster@faplawfirm.com

1081.0001\KMD
4841-1478-9990 .v1

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of June, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record:

Agnis C. Chakravorty, Esq.
Woods Rogers PLC
Wells Fargo Tower
10 S. Jefferson Street, Suite 1400
Roanoke, VA  24038-4125

Lindsay R. Barnes, III, Esq.
DLP Piper LLP
500 8th Street, NW
Washington, DC 20004

*Counsel for Defendants*

    /s/ John C. Johnson
    John C. Johnson
    Virginia State Bar No.: 33133
    Katherine M. DeCoster
    Virginia State Bar No. 82696
    Counsel for Alison Hester
    FRITH ANDERSON + PEAKE, PC
    29 Franklin Road, SW
    P.O. Box 1240
    Roanoke, Virginia 24006-1240
    Phone: 540/772-4600
    Fax: 540/772-9167
    Email: jjohnson@faplawfirm.com
           kdecoster@faplawfirm.com



1081.0001\KMD
4841-1478-9990 .v1